1
2
3
4
5
6          **IN THE UNITED STATES DISTRICT COURT**
7              **FOR THE DISTRICT OF ARIZONA**
8
9   Raymond Andrew Bianco,                    No. CV-16-04298-PHX-PGR (ESW)
10                 Petitioner,                **REPORT AND**
                                              **RECOMMENDATION**
11  v.
12  Charles Ryan, et al.,
13                 Respondents.
14
15
16
17  **TO THE HONORABLE PAUL G. ROSENBLATT, SENIOR UNITED STATES**
    **DISTRICT JUDGE:**
18
19          Pending before the Court is Raymond Andrew Bianco's ("Petitioner") Petition
20  under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") (Doc. 1).
    Respondents have answered (Doc. 19), and Petitioner has replied (Doc. 20).  The matter
21  is deemed ripe for consideration.
22
            The Petition contains one ground for habeas relief, which the undersigned finds is
23  procedurally defaulted without excuse.  It is therefore recommended that the Petition be
24  dismissed with prejudice.
25
                              **I.  BACKGROUND**
26
            In September 2010, a jury sitting in the Superior Court of Arizona in and for
27  Maricopa County convicted Petitioner of first degree murder and conspiracy to commit
28  first degree murder.  (Bates No. 2595).  The Arizona Court of Appeals detailed the facts

underlying Petitioner's convictions as follows:

> ¶ 3    Victim Armando Paul Alvarez, Jr. was shot and killed in Phoenix on the night of March 22, 2006. Allegedly, Bianco hired three teenage boys (Israel (Fu Fu) Legliu, Sylvester Carpio, and Fabian Cordova) to terminate the victim because the victim owed Bianco money. Cordova agreed to testify against Bianco and the other co-defendants in exchange for a lesser charge of second degree murder. Elvira Gallego, a coworker of the victim, allegedly lured him and drove him to the area where he was killed at the behest of Bianco. Gallego also agreed to testify against Bianco and the other co-defendants in exchange for a plea of facilitation of first degree murder.

(Bates No. 2725-26).

On December 10, 2010, the trial court sentenced Petitioner to (i) natural life on the first degree murder count and (ii) life without the possibility of parole for 25 years on the conspiracy to commit first degree murder count. (Bates No. 2682-87). The Arizona Court of Appeals affirmed Petitioner's convictions and sentences on September 25, 2012. (Bates No. 2724-27).

On October 3, 2012, Petitioner filed a Notice of Post-Conviction Relief ("PCR"). (Bates No. 2728-2730). On May 22, 2013, through counsel, Petitioner filed a PCR Petition. (Bates No. 2731-55). The trial court denied the PCR Petition on December 19, 2013. (Bates No. 2769-2774). Petitioner sought review of the trial court's denial of his PCR Petition in the Arizona Court of Appeals, which denied relief. (Bates No. 2775-2807, 2814-2816). The Arizona Supreme Court denied Petitioner's request for further review on January 11, 2016. (Bates No. 2817). On December 8, 2016, Petitioner timely initiated this federal habeas proceeding. (Doc. 1). In his single claim for habeas relief, Petitioner alleges that his trial counsel was constitutionally ineffective for failing to timely file a motion for new trial and motion to vacate judgment. (Doc. 1 at 5, 17-26).

## II. DISCUSSION

### A.  Legal Standards Regarding Procedurally Defaulted Habeas Claims

If a claim was presented in state court, and the court expressly invoked a state procedural rule in denying relief, then the claim is procedurally defaulted in a federal habeas proceeding.  *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001).  Even if a claim was not presented in state court, a claim may be procedurally defaulted in a federal habeas proceeding if the claim would now be barred in state court under the state's procedural rules.  *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  The procedural default doctrine is rooted in the general principle that federal courts will not disturb state court judgments based on adequate and independent state grounds.  *Dretke v. Haley*, 541 U.S. 386, 392 (2004).

A procedural default determination requires a finding that the relevant state procedural rule is an adequate and independent rule.  *See id*. at 729-30.  An adequate and independent state rule is clear, consistently applied, and well-established at the time of a petitioner's purported default.  *Greenway v. Schriro*, 653 F.3d 790, 797-98 (9th Cir. 2011); *see also Calderon v. U.S. Dist. Court*, 103 F.3d 72, 74-75 (9th Cir. 1996).  The ultimate burden of proving the adequacy of a state procedural bar is on the state.  *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  If the state meets its burden, a petitioner may overcome a procedural default by proving one of two exceptions.

In the first exception, the petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law.  *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014).  To demonstrate "cause," a petitioner must show that some objective factor external to the petitioner impeded his or her efforts to comply with the state's procedural rules.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004).  To demonstrate "prejudice," the petitioner must show that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 ("Such a

showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.").

In the second exception, a petitioner must show that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780. This exception is rare and only applied in extraordinary cases. *Wood v. Ryan*, 693 F.3d 1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). The exception occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense that is the subject of the barred claim." *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327). A petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). The miscarriage of justice exception is also referred to as the "actual innocence gateway" or the "*Schlup* gateway." *See Smith v. Baldwin*, 510 F.3d 1127, 1139-42 (9th Cir. 2007).

**B. Petitioner's Habeas Claim is Procedurally Defaulted**

It is undisputed that Petitioner presented his habeas claim in his PCR Petition. (Doc. 19 at 15). After the trial court denied the PCR Petition, Petitioner filed a Petition for Review in the Arizona Court of Appeals. (Bates No. 2775-2807). The Arizona Court of Appeals found that the Petition for Review

> presents a cursory and incomplete summary of the trial court's ruling and asserts, without explanation, that he "presented ample support for his allegations" in his petition for post-conviction relief and that we therefore should grant relief on review. In denying relief, the court provided a detailed account of each of Bianco's claims, reviewed the testimony it heard at trial, and explained in similar detail its reasons for rejecting the claims. But Bianco does not develop any argument that the court abused its discretion in doing so, instead merely restating verbatim several of his claims—including citations to appendices that he did not include with his petition for review. *See* Ariz. R. Crim. P. 32.9(c)(1) (petition for review must contain "reasons why the petition should be granted" and either appendix or "specific references to the record," but shall not "incorporate any document by reference, except the appendices"). He has

- 4 -

> therefore waived review of those claims, and we do not
> address them further.

(Bates No. 2815-16). The Arizona Court of Appeals reasonably found that the Petition for Review does not develop any argument that the trial court improperly denied the PCR Petition. Except for a very brief overview of the trial court's ruling and a three-sentence section entitled "Reasons Why this Court Should Grant Relief," the Petition for Review is nearly identical to the PCR Petition. (Bates No. 2731-55, 2775-2807). The Petition for Review fails to detail how the trial court erred in rejecting Petitioner's PCR claims.

Arizona Rule of Criminal Procedure 32.9(c)(1) is clear, well-established, independent of federal law, and has been consistently applied by Arizona courts. *See, e.g.*, *State v. Stefanovich*, 302 P.3d 679, 683 (Ariz. Ct. App. 2013) (holding that defendant waived review of PCR claim "because he cites no relevant authority and does not develop the argument in any meaningful way"). Arizona Rule of Criminal Procedure 32.9(c)(1) is therefore adequate to bar federal review of a habeas claim. *Cf. Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim."). As the Arizona Court of Appeals did not review the merits of Petitioner's habeas claim by applying an adequate and independent state procedural rule, the claim is procedurally defaulted. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005) (procedural default "applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements").

### C. Petitioner's Procedural Default is Not Excused

The merits of a habeas petitioner's procedurally defaulted claim are to be reviewed if the petitioner (i) "makes an adequate showing of cause and prejudice" or (ii) can pass through the *Schlup* gateway, which "exists only for those who can demonstrate their actual innocence." *Smith*, 510 F.3d at 1142, 1146 (internal quotation marks and citation omitted).

## 1. Petitioner has Not Established "Cause" for the Procedural Default

In order to establish cause for a procedural default, "a petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be attributed to him." *Smith*, 510 F.3d at 1146 (internal quotation marks and citation omitted). Petitioner presents no argument that his procedural default should be excused under the cause and prejudice exception. The undersigned does not find that the record presents any evidence that Petitioner's procedural default is due to an external factor that cannot fairly be attributed to him.[1] Cause therefore has not been established. Where a petitioner fails to establish cause, the Court need not consider whether the petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Accordingly, the undersigned finds that Petitioner has not satisfied the "cause and prejudice" exception to excuse his procedurally defaulted habeas claim.

## 2. The *Schlup* Gateway/Miscarriage of Justice Exception Does Not Apply

As mentioned, a petitioner seeking federal habeas review under the *Schlup*

---

[1] To the extent Petitioner may contend that his procedural default was a result of the ineffective assistance of PCR counsel, such ineffective assistance would not constitute "cause." In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the Supreme Court held that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." However, *Martinez* expressly states that its holding "does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 1320 (emphasis added). In other words, the *Martinez* exception "does not extend to attorney error at post-conviction *appellate* proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim." *West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (emphasis in original).

In addition, before an ineffective assistance of counsel claim can be considered "cause" to excuse the procedural default of another constitutional claim, a petitioner must have fairly presented the ineffective assistance of counsel claim in state court as an independent claim. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451–52, (2000) ("In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in *Carrier* that the principles of comity and federalism that underlie our longstanding exhaustion doctrine . . . require that constitutional claim, like others, to be first raised in state court."). Petitioner did not raise in state court a claim that his PCR counsel was constitutionally ineffective in relation to the Petition for Review.

- 6 -

gateway/miscarriage of justice exception must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley*, 523 U.S. at 623; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998)).

Petitioner does not explicitly assert that the Court should excuse his procedural default because he is actually innocent.[2] Petitioner instead argues that "[t]he ineffective assistance of counsel produced a manifest miscarriage of justice this Court can address in this Habeas Corpus action." (Doc. 20 at 13-14). Yet "the miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original); *see also McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) ("The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'") (quoting *Schlup*, 513 U.S. at 329). As discussed below, Petitioner has failed to establish a *Schlup* gateway claim.

Petitioner's argument that there has been a miscarriage of justice in his state court case primarily rests on Petitioner's assertion that Elvira Gallego ("Gallego") provided false testimony at Petitioner's trial. Petitioner asserts that "the State's collection of facts, when purged of Ms. Gallego's unreliable and perjured testimony, could not lead a rational jury to convict Mr. Bianco of the two crimes beyond a reasonable doubt." (Doc.

---

[2] A footnote in Petitioner's Reply states that he "pleaded not-guilty to the crimes because he *contended* he is innocent." (Doc. 20 at 13 n.25) (emphasis added). Petitioner does not affirmatively maintain that contention of innocence in his filings with this Court.

20 at 12).   This is a legal insufficiency argument and does not support a factual innocence finding.  *See Rosa v. United States*, EDCV 16-2358-JGB (KK), 2017 WL 1364204, at *3 (C.D. Cal. Jan. 20, 2017) ("While Petitioner argues 'there was no physical evidence connecting the petitioner to the conspiracy,' and that, absent the perjured testimony, 'the governments [sic] case was little more than fabrication,' these assertions do not support a finding of factual innocence.") (citing *Bousley*, 523 U.S. at 623);[3] *see also Hageman v. Hill*, 314 F. App'x 996, 997-98 (9th Cir. 2009) (finding that a trial judge's affidavit that stated that the judge may have misjudged the sufficiency of the evidence does not constitute evidence of factual innocence and holding that the petitioner "has not demonstrated actual innocence that would excuse his procedural default").

Moreover, Petitioner has not produced any evidence establishing that Gallego provided false testimony at Petitioner's trial.  Gallego's trial testimony is summarized as follows.

Gallego stated that she met the victim Armando Paul Alvarez, Jr. ("Paul") while working as a security guard at the Arizona Mills Mall (the "Mall") where Paul worked at a kiosk.  (Bates No. 1736, 1739, 1748).  Gallego testified that one day, while she was working the Mall, she saw Petitioner and three other individuals at Paul's kiosk and heard Petitioner ask Paul "Where is my money at?"  (Bates No. 1749-51).  Gallego further testified that she saw Petitioner pat Paul down and told Paul that "if he didn't have his money that he was going to kill him because his family is the bottom of their shoe.  His family is nothing."  (Bates No. 1751).  Gallego told Petitioner that "he couldn't start anything" and Petitioner and the other individuals walked away.  (Bates No. 1751-52).  Gallego stated that Paul told her that he did owe Petitioner money, explaining that Petitioner gave him "[$]1,500 in cash and weed."  (Bates No. 1752).

Gallego testified that Petitioner later stopped Gallego at the Mall and requested

---

[3] *Rosa* involved the "escape hatch" provision of 28 U.S.C. § 2255.  Actual innocence claims under the "escape hatch" provision are tested by the standard articulated in *Bousley*, which applies when analyzing *Schlup* gateway claims. *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006) (citing *Bousley*, 523 U.S. at 623).

Gallego's phone number so that he could take her out on a date. (Bates No. 1755).
Gallego gave Petitioner her phone number and a few days later, Petitioner took her to
dinner at Denny's. (Bates No. 1756). While at Denny's, Gallego testified that Petitioner
"started talking about how he wanted to kill Paul and he was going to do it. He didn't
care what anybody said. And if he couldn't get to Paul, through me, he was going to kill
his family." (Bates No. 1757). Gallego testified that on another day, she was at her
friend Vanity's apartment with Petitioner and three other individuals who were
implicated in Paul's murder: Israel ("Fu Fu") Legliu, Sylvester Carpio, and Fabian
Cordova ("Fabian"). (Bates No. 1761-62). Gallego testified that while at the apartment,
Petitioner called Fu Fu into a room so that he could speak to Fu Fu alone. (Bates No.
1768).

Gallego explained to the jury that she drove Paul to the park where he was
murdered. (Bates No. 1775) ("[W]e were going to meet them at the park" so they could
"[k]ill Paul."). Gallego testified that "Fabian, Sylvester, and Fu Fu came out running and
started shooting Paul." (Bates No. 1777). Gallego also testified that after the shooting,
she drove to a friend's house and called Petitioner to request that he pick her up. (Bates
No. 1778). Petitioner picked her up and took her to Vanity's apartment complex.[4] (Bates
No. 1778-79). Petitioner parked in the parking lot and called Fu Fu to come down from
the apartment. Gallego testified that Fu Fu "came down and the two boys, Sylvester and
Fabian, were standing at the door. And [Petitioner] gave Fu Fu some money and a gun
and told him thanks." (*Id.*).

As previously mentioned, Gallego entered into a testimonial agreement. (Bates
No. 1899). Gallego testified that she lied during various pre-trial interviews when she
told interviewers that she did not know Paul was going to be killed if she drove him to the
park. (Bates No. 1783, 1903-04). Petitioner states that the trial court found that Gallego
breached the testimonial agreement by failing to provide truthful answers to "material

---

[4] Gallego explained that she borrowed a friend's Escalade to take Paul to the park
and let Fu Fu borrow her vehicle "because he [did not] have a ride to meet Paul at the
park." (Bates No. 1774).

questions in all stages of the investigation and interviews." (Doc. 1 at 15).

Gallego also testified at subsequent co-defendant trials. In support of the contention that Gallego committed perjury while testifying at Petitioner's trial, Petitioner notes that during a co-defendant's trial, the judge stated the following with respect to Gallego's testimony:

> I have heard testimony that's not consistent with the last time she was here, so at one point, she was lying under oath. . . . My courtroom is not a farce. It's not something for you come in here and lie under oath. **I'm not saying that you have**. What I'm saying is because I presided over both trials, I believe I have heard some testimony that has been different from what was said previously by this same witness while under oath.

(Doc. 1 at 16-17). The trial judge's statements above indicate that Gallego provided subsequent testimony that was inconsistent with the testimony given at Petitioner's trial. Those statements do not show that Gallego committed perjury while testifying at Petitioner's trial. "Discrepancies in . . . testimony . . . could as easily flow from errors in recollection as from lies." *United States v. Zuno–Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995); *see also Carriger v. Stewart*, 132 F.3d 463, 483 (9th Cir. 1997) (explaining that "[r]ecanting testimony has long been disfavored as the basis for a claim of innocence," noting that "witnesses forget" and "witnesses with personal motives change their stories many times, before and after trial").

In addition, the undersigned does not find that the record and pleadings in this case contain "evidence of innocence so strong that [the Court] cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S.Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316). First, Petitioner implicitly concedes that Gallego's trial testimony provided significant evidence of Petitioner's guilt. (Doc. 1 at 11) (asserting that Petitioner was convicted "based not upon physical evidence but upon the perjured testimony of Ms. Elvira Gallego that the prosecution presented at trial"). Petitioner's trial counsel emphasized to the jury that Gallego admitted she lied during pre-trial proceedings. (Bates No. 2528, 2539-40). Counsel also asserted that "[t]here's not a bit of

- 10 -

corroboration that Mr. Bianco was involved in this, not a bit, apart from the statements made by the two people who are benefiting from this, not a bit. And in fact, there's every bit of evidence that disputes their story." (Bates No. 2545). Counsel contended that "the evidence shows that Elvira Gallego arranged the murder of Paul Alvarez." (Bates No. 2524). The jury rejected that theory. Although Petitioner continues to maintain that Gallego is not a credible witness, "the determination of credibility is for the jury." *Zuno–Arce*, 44 F.3d at 1423.

Second, the State's case did not rest entirely on Gallego's testimony. For instance, the State introduced evidence that (i) Petitioner and Paul were members of the same gang; (ii) Paul owed Petitioner money that Paul refused to pay; and (iii) Paul disrespected Petitioner in front of others. (Bates No. 1992, 2205-06, 2211). The State called an expert on criminal street gangs, who testified that "[r]espect and money are probably the two top things of importance to criminal street gangs." (Bates No. 2195). The witness testified that a gang member who allows a person to "get away" with not paying a debt "would be looked at as a weak member of a criminal street gang," and the gang member "may be dealt with, even by [his] own members." (Bates No. 2202). The State asked the witness "And if you are a criminal street-gang member and you are disrespected in front of another criminal street-gang member by someone, can you let that slide?" (Bates No. 2203). The witness replied "Absolutely not. You would be expected to deal with it[,]" otherwise "your own gang would stop doing business with you, or may even set an example of you." (*Id.*).

The State also called Paul's girlfriend, who testified that she saw Paul have a confrontation at the Mall with a "group of guys," one of whom Paul identified as "Raymond." (Bates No. 1546-48). The girlfriend testified that Paul was scared and stated "let's go, let's hurry, let's go before they find out where we live, before they follow us." (Bates No. 1547). In addition, Paul's mother testified that approximately three to four years before he died, Paul told her that "Ray Bianco" was threatening him. (Bates No. 1374-75).

Finally, the State called Fabian, who testified that "towards the end of February, early March" in 2006, he was at Vanity's apartment with Petitioner, Gallego, and Fu Fu. (Bates No. 2014). Fabian stated that at one point he saw Fu Fu talk with Petitioner alone in the kitchen for approximately fifteen minutes. (Bates No. 2017). After Petitioner left, Fu Fu "pulled [Fabian] aside" into a room and "looked scared." (Bates No. 2018). Fabian testified that "Fu Fu told [him] that Ray told him to take care of this person and if not then [Fu Fu] was going to get taken care of." (Bates No. 2019). Fabian clarified that he understood this to mean that if Fu Fu "didn't do what Ray told him then I guess [Fu Fu] was going to get killed." (*Id.*). A handwritten note was found in Petitioner's residence that listed the names of Fu Fu, Sylvester Carpio, Israel, and Fabian. (Bates No. 2259, 2550).

Petitioner has not presented any new reliable evidence establishing that he is factually innocent of his convictions. The undersigned finds that Petitioner's *Schlup* gateway claim rests on arguments of legal insufficiency rather than factual innocence. The undersigned therefore does not find that the *Schlup* gateway/miscarriage of justice exception applies to excuse Petitioner's procedural default. *See Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013) ("[W]e have denied access to the Schlup gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt"). It is therefore recommended that the Court dismiss the Petition with prejudice.

### III. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because the dismissal of a majority of Petitioner's habeas claims are justified by a plain procedural bar.

This recommendation is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 14th day of December, 2017.

_____
Eileen S. Willett
United States Magistrate Judge